Well, the three issues is whether the denial of the motion for judgment as a matter of law was an error, and the verdict that the defendant was not liable on plaintiff's claim under the Unruh Civil Rights Act went against the weight of the evidence. And the last issue is the court's jury instruction claim under the Unruh Civil Rights Act that, in essence, it would be intentional discrimination. Well, in fact, I mean, the case, the instructions seem totally bizarre. The instruction, as I understand it, was, on the one hand, that discrimination had to be a motivating factor. Disability discrimination had to be a motivating factor. But on the other hand, that intent was not required. Both of those instructions were given. Isn't that right? That's correct. So how can we say that the instruction wasn't? First of all, I don't understand how those two instructions can coexist. Apparently, the lawyers in the case thought they could, and they discussed them very earnestly, but nobody has explained to me how those two instructions can coexist. But they at least seem to cancel each other out. And the no intent one, it seems very odd to be deciding in this case whether you can have an intent instruction when you had a no intent instruction. But you had ‑‑ I mean, our position is that when you say the disability was a motivating factor, you're saying it's intent. And I understand ‑‑ Well, I actually think ‑‑ I understand the court saying, well, but there was no intent. Well, I actually think that the motivating factor instruction is probably wrong, even if you do require intent, because intent and motivating factor are two different things. And I don't read even the Supreme Court case in Gunther as requiring that in an ADA case, you have to mean to be mean to disabled people as opposed to intend not to provide them access. So I would think that the motivating factor instruction is probably wrong anyway. But in any event, here, the instruction on intent, you don't need intent. So how do we even go about deciding this issue in this case, as opposed to say the instructions were just wrong, confusing, made no sense, and it should be reversed for that reason? Well, she took the words out of my mouth. Where did that motivating factor instruction come from? The court indicated it came from a California form instruction. What was it, and what was the authority given for the California form instruction, throwing in this motivating factor? I think this comes out of the employment, labor areas of discrimination. Is it a CALGIC or a Bagi? Bagi. And is there any authority given? Sometimes they'll give authority for where they got it from. Was there authority given in Bagi for where they got this? Well, there's the authority given in Bagi, but there's no ‑‑ What did they say? What did Bagi say as authority for this motivating factor point? Well, my recollection is that is one of the factors that you have in employment cases to show that there's discrimination by an employer. And our argument was, well, it doesn't apply in a Title III case, anything that deals with a motivating factor in discrimination. So the form instruction that the court was using was from the employment area, not from the disability area? Correct, because there isn't any in the disability area. And the motivating ‑‑ it would seem to me that a motivating factor instruction is incorrect in the ADA context generally, whether or not you require intent. The intent would be an intent to do whatever is prohibited by the ADA, which is not to provide access, but it doesn't turn on whether there is a mental state to discriminate against disabled people. I would agree with you. But, you know, if a jury isn't guided properly, and maybe we should have just raised the issue that, you know, that this was significantly prejudicial or that it had to be reversed, but a jury, depending on what they want to do, will seize upon a particular jury instruction. So if, you know, the foreman, if they serve on ‑‑ if they focused on motivating factor, I think it's easy to say, well, there wasn't any motivating factor, so there's not going to be any liability. Is there any case holding that in a discrimination case there is ‑‑ you can't recover damages unless you're intending to disadvantage disabled people? Can you say that again? Is there any case? Is there any case holding, even Gunther, that you have to intend to disadvantage disabled people, as opposed to in order to recover damages in a disability case? I just kind of got blocked with the coughs there. I don't think there is any. Well, what do you ‑‑ what do you think the California Supreme Court meant in Harris when it said, we hold that a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act, and a disparate impact analysis or test does not apply to Unruh Act claims, and then they go on to say that that evidence could nevertheless be admissible because it would probe ‑‑ it would be probative of intentional discrimination in some cases. So what does the California court mean there by saying you can't just show that there's been disparate treatment, or disparate impact, you have to show intent, intentional discrimination? Well, I mean, I think the difference is that in Harris you're talking about disparate impact, and when you're talking about a Title III Unruh Civil Rights Act, you're talking about discrimination that comes about not based upon, you know, race or gender or ethnicity, but on the fact that there are barriers there that ‑‑ I'm asking a slightly more theoretical question than that. What does the court mean when it says that a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations? What do they mean by intent? Well, I think what they're saying right there in Harris is that they are saying that it has to be intent. Okay. Is intent different than motivation or a motivating factor, and if so, in what way? Well, I would argue that motivating, you know, motivating factor is an indication of, you know, willfulness, being intent on doing something, active as opposed to inaction. Title III cases are, as was indicated in PRESTA by Judge Felton. Henderson. Judge Henderson, please. Excuse me. Felton, Judge Felton Henderson. That it's, you know, a question of, you know, the barriers being there and the denial of the goods and services. There are several levels of intent or definitions of intent that one could come up with. One might be I intend to keep those people in wheelchairs out of my restaurant because I don't like them. One could be I intentionally don't have a wide restroom and I know that I should. One could be I intentionally don't have a wide restroom but I don't know that I should. And one could be I don't even know I don't have a wide restroom. So those are different states of mind. And one could be I'm intentionally not making it accessible, even though it's so simple, to remove barriers such as lower the dispenser or raise the toilet seat. But any disabled person who can manage to get in here I don't have a problem with, which would suggest that disability is not the motivating factor. In other words, there could be the state of mind could be I'm not going to do anything to help them, but I don't have any problem with disabled people coming in here if they can get in here. So I'm not really motivated by not wanting disabled people in here. I'm just motivated by not wanting to help them get in here. Or by wanting to save money by not making them. Correct. You could say that. But I just think that when you put that motivation in there for a juror, it is akin to being willful or it's akin to being intentional when you're saying, you know, a motivating factor. Doesn't Title III of the ADA define discrimination? Literally say discrimination includes not having physically accessible buildings. So when you then take after Harris to the state statute, the flat statement that any violation of the ADA is a violation of the statute, and then in Section 52 say to discriminate is a violation, we now have a situation where the word discriminate is being defined to include not having access. Correct. And that seems to me to take to be an important factor here. How would you? What the Court just expressed is absolutely correct. There is nothing. But it's not what the Gunther Court said about California law. It may be abstractly correct, but it's not what the California court has said about that. That's correct. And Gunther's absolutely wrong when you look at the. Well, but wait a minute. Gunther was a very strange set of facts. Because, in fact, there was an argument that in Gunther they didn't even intend not to have the access. It was just a screw-up. It was negligent. They didn't set up their bathrooms that way. It was just a mess-up. So that would fit, you know, among Judge Wilkins' different kinds of intent, it would be a very narrow version of intent. Would it be a motive standard? Why would there be any necessity for having intent if the ADA never talks about intent? There's nothing in there about intent. It's just that you have a duty to identify and remove. And the Unruh Civil Rights Act incorporates it by reference as though it's a violation. It doesn't say the intention. But Gunther did say, Gunther said whether we're bound by it or not is another question. But Gunther did say that some version of intent was being incorporated. But the question is what version. No version. Let me ask you the question that underlies all this, which is, in your view, are we bound to follow Gunther, whatever it means and whether it's distinguishable or not? Are we bound to follow it under the doctrine of In re Watts that says that when we make a decision, but then an appellate court of the state makes a subsequent decision, we're bound to follow that court's interpretation, whether we agree with it or not? Well, I mean, I would rely on, you know, the opinion in Lantini. Well, that's my point. Gunther came after Lantini. And my question to you has to do with whether you read our case in In re Watts to say, or not, that when we've made a decision about state law, and then the state court, intermediate court, makes a later decision saying, no, no, Ninth Circuit, you got state law wrong, don't we have to follow that later intermediate state court on a question of state law? I don't believe so, because you've already done it in Watts. What's your best case to say that we don't have to follow that later case? I don't have anything. I'm sorry. What do you think about certifying this question to the California Supreme Court, the question of Gunther versus Lantini, shall we say, or Gunther versus Harris? Well, you know, that's certainly an option to do that. But I think it's well-reasoned in the Wilson case by Judge Carlton. Why Gunther doesn't apply. And I think the Ninth Circuit could continue with that, especially in light of the fact that it's an incorporation of the federal law, fully incorporated. So that in this particular area, full incorporation, there is no intent. Because otherwise what you have then is you have the California Supreme – Well, you're having a California court say that we now have to prove up an ADA claim. It has to be intentional when it's not in the ADA anyway. Isn't there a difference between saying that certain behavior is a violation of law and deciding then that being so, what is the remedy? Because under the ADA, you can't get these kinds of damages at all. There's no damages, correct. Right. So I don't understand why it's inconsistent to say that an ADA violation is per se a violation of the behavioral or conduct standards of state law. But if you want to get these damages, you have to also prove intent that you don't have to prove for the base conduct. Why is that inconsistent? Well, I think it's inconsistent because why should you have to go to some higher plateau of intent when it's not – to get the damages when it's – when the state court – the state codes incorporates the ADA that doesn't have it? Why should a state – why should there be an intent requirement when it's not in the law? But one oddity about Gunther is that it seems to understand that what it is deciding about California law is parallel to the ADA. It says wrongly, as far as I know, that the ADA permits compensatory – compensatory awards for intentional discrimination, but not for unintentional discrimination. And that's just wrong. Am I right about that? Am I right that it's wrong, i.e., that the ADA does not – I think it's right if it's being prosecuted by the attorney – the U.S. Attorney General's office. The Attorney General. But it doesn't – he doesn't say that. Then I think you get – you can get the damages. What they seem to be citing is – is employment cases in which you can get damages, and they just seem mixed up about that. So one premise of their argument just seems to be factually incorrect. Is that right? Well, it's correct for the Attorney General's office or a state prosecutor, but it's not for a private litigant to be able to get damages. It doesn't exist. When the – when the Attorney General seeks those damages, what kind of intent has to be proved? I couldn't answer that because – Does the Attorney General – It's not been something – you know, I'm not an attorney. But, in fact, does the statute say that the Attorney General has to prove intent? I don't think so. I thought the Attorney General could just sue for damages and private people can, but I don't think there's an intent requirement for the Attorney General. I'm not sure about that. I couldn't say. You don't know? No. Maybe opposing counsel can help us out. Your time has expired, and we'll hear from Mr. Lank. Good morning, Your Honors. James Lank on behalf of the Respondents. First, I do want to state that counsel below did not agree that these instructions were proper. I tried the case, and I argued, and I've cited and provided you a supplemental record. They're probably not proper, but they're awfully confusing. Could you explain to me what it means to say that somebody has a – that discrimination is a motivating factor, but there's no intent? What does that mean? Your Honor, I argued for an intentional act instruction, and it's in the record, and I was denied that. I understand. No, but you were agreeing that there's something coherent about this. You kept saying, well, you understand what this means, but you don't agree with it. But I don't understand what it means. Your Honor, I understood what it meant in the sense that the Bagi instruction has provided for a motivating factor requirement. The Bagi instruction cites to the Harris case, I believe it cites to Hankins v. Del Taco – excuse me, El Torito, which, in fact, is a case in which we have an access case where intentional conduct was required, and the Court found that it had been proved. But intentional conduct and motivating factor are not the same thing. Your Honor, I would agree with you on that, and I do agree with you on that. I think it should have been an intentional act requirement, and I specifically argued for it. And with respect to what the judge did, she did, in fact, define motivating factor as one including that which makes people act. Let's see. But how could we possibly uphold this judgment on the ground that it's proper under Gunther to have intent requirement when the judge specifically told him there was no intent requirement? Your Honor, because there's no prejudice in this matter. The fact of the matter is the jury didn't seize upon any of the jury instructions as we've presented in our case. What the jury seized upon was the fact that the plaintiff was completely incredible. All right. You can talk about that in a moment. But assume we don't agree with that. How could we uphold this judgment on the Gunther theory when the actual instruction on the exact Gunther issue was that there was no intent? Because I think the judge actually gave an instruction that made the burden easier for the jury to find in favor of the plaintiff rather than with a state intentional act instruction. Actually, I would think it's actually the opposite. It seems to me that intent can include — in other words, to go back to Judge Wilkins' examples, if you have barriers and you intend to have those barriers, you know, you consciously built the bathroom that way, that would seem to satisfy Gunther's intent. But you could do all that and be perfectly happy to have disabled people in your restaurant if they can get in, so you're not motivated by the fact that they're disabled. So it seems to me the motivating factor instruction is the harder one to meet and probably or at least arguably not consistent with Gunther. Your Honor, the motivating factor, I think, was based upon whether or not there was some form of action that was taken that failed to provide for access. Was there a lack of access that — to the disabled? That's the motivating factor. That's what you think the jury would understand the motivating factor of? I think it was argued that way by both sides, Your Honor, because I wasn't allowed to argue intentional wrongdoing. I was only argued to allow this motivating factor issue. The same with — obviously Plaintiff Counsel didn't want to argue intentional conduct at all. And the motivating factor was the issue of whether or not this restaurant had in fact failed to provide access to the disabled and that that access was the reason why they had failed to do so. In effect, Your Honor, the instruction as Counsel for Plaintiff has indicated is that it was an intentional act, an intentional failure to provide for access, which quite frankly was not the case here and not even close to the case here with respect to the facts that occurred. Gunther says, for example, that — go ahead. Go ahead. Gunther says, for example, that if there's a door that you can't get into with a narrow being sufficient intent. Right? Don't they say — just by itself? Anybody would know that if you can't get — if a door is so narrow that you can't get in, that disabled people can't get in, that's sufficient intent. Your Honor, I don't think it quite goes that far because I think there is some discussion on what is readily achievable and not readily achievable. Well, I understand that. But in terms of — So the answer — I can't answer that question straight, and I apologize for that. But as far as — Your Honor, I think I disagree with that because I think Harris' — Harris on which it is based is quite clear, that it has to be intentional, an intentional act that discriminates against the disabled. Now, whether you say, I don't like people with cerebral palsy, so I will not change    I don't think that's the right thing to do. It's the intent directed at the disability or a disability or a function that cannot be undertaken by a disabled person, not the particularity of that person's disability. In other words, what type or nature of disability that person has. I think that's the distinction that's being made. I think intentional wrongdoing was certainly a — which we argued for was certainly a much cleaner issue. But the badge instruction has been around for a long period of time. It has been rolled into whatever we're calling case — I think it's called Casey. And it is, in fact, based on Harris and some of these other cases. You mentioned another case, El Torito or something like that?  That's a disability case? It is a disability case and it is an access case, yes. And Harris is our Harris. And Harris — It's the disability Harris. It's the disability Harris, correct. It's the Supreme Court case. And, Your Honors, I would go back to the statement that, frankly, this case shouldn't get past the factual decision that was made by the jury. The jury didn't rely on jury instructions. The jury relied on the fact that plaintiff's corroborating witness wasn't there and plaintiff's changed — We can't know that for sure. There's two ways the jury could have gone and we can't know which one it was. That's — If one way was wrong, we can't say, well, he might have gone the other way, so it's okay. Well, understood, Your Honor. But there's certainly sufficient evidence to establish what they were looking at and what they asked as far as their questions were concerned. The second set of questions out of the box was, where's plaintiff's corroborating witness and do we have anything in writing that he was there? The third question out of the box had to do with the deposition testimony that was read to them that was entirely inconsistent with his trial testimony. The jury simply didn't believe he was there. And this Court didn't have — I mean, the jury has a right to say that they don't believe the witness at all. And I think that's the result. There's no special interrogatory. No, I understand that. We can't know what theory they went on. And I don't think we would even be allowed to assume one and not the other. And may that be definitive in the decision. Your Honor, I would agree with that, except there is certainly sufficient evidence to establish that — Well, yes, sufficient, but that doesn't help us. Well, it helps us — it helps you in the fact that the jury came back with a defense verdict and these instructions aren't — Isn't there harmless error? I believe it is harmless error, Your Honor, because it's — instead of getting an intentional act where I — where they would have had to have proved that they intended to prevent Mr. Jenke from using the restaurant, we end up with a motivating factor issue. Do you have to — do you have to have us agree with that to win your case or can you win on the intentionality aspect of the case as well? I — if I understand your question directly, was there intentional wrongdoing at the time by Los Barrios? Is there any evidence of intentional wrongdoing? No, there's no evidence of intentional wrongdoing. To go back to maybe what was argued in the last case, what is interesting to note is the lawsuit was filed on October 22. It's all part of the record, of course. On October 21, it was served. By February 2000 — excuse me, I'm saying 2002, 2004. By February of 2005, the restaurant was basically fixed. And what I'm — and the suggestion here is that, yes, people should know, they didn't know. It wasn't a matter of intentional wrongdoing. But that's not — on any theory of intent, well, not any, but ordinarily, that's not what we mean by intent in the law because you don't have to know the law, right? Understood. So the fact that they didn't know that they were violating the law is irrelevant to the intent question. Well, I would disagree with that in this sense. I don't know what readily achievable means. I don't think any court has decided what readily achievable means. And to try to figure out exactly what is required — But this structure was built in the 60s before these laws were passed, correct? 1968. That's correct, Your Honor. So the question then, as a legal question, becomes whether it had to be retrofitted. That's correct. Okay. And we have evidence in the record that ABC, Alcoholic Beverage Control, and other inspectors have come through, other government inspectors have come through. Never was anything ever said with respect to whether or not these restrooms had to be upgraded in any fashion. We had a fight, frankly, at the time of trial, albeit a small one, but a fight nonetheless over whether or not you had to remove a urinal. Under the ABC requirements, you have to have a urinal. You can't go to a unisex bathroom when you have a liquor license. You have to have two restrooms. Now, yes, could you go and spend a lot more money and get a variance? Perhaps you could. In this particular circumstance, it wouldn't have made a difference, because you had a boiler or a fairly sizable water heater in between the two restrooms that might have made things very, very difficult to do from a readily achievable standpoint. So was this intentional wrongdoing? Of course it wasn't. Is anyone in business to try to attract as many people to their business as possible? Of course they are. Do you need to spend $75,000? Not this case. We spent $4,000, but we're a little taco stand, effectively. That's the kind of problem that you have in hanging intentional conduct on this. Was Busbury Trust a franchise operation? No. Well, no, because they're all individually owned. There were six or seven restaurants that were owned by the same people. So they're just your basic taco stands around town. But, no, it's not a franchise. It's not like McDonald's or even a smaller one, whatever you could think of. I'm still not understanding why it's not intentional, in the ordinary sense of intentional, if we take motive out of it. They had the building the way they intended to have it. They didn't, unlike in the Gunther case, it wasn't that some employees put up something they weren't supposed to put up or that they were in the midst of fixing something, but it wasn't quite fixed yet. It was the way they meant it to be. And it was quite cheap to fix, so it seems like the readily achievable thing is sort of out the window in terms of not being an issue here. So why wasn't it intentional? Your Honor, quite cheap to fix, this was $4,000. I don't think that's necessarily cheap to fix. Plus, it couldn't be fixed completely to comply with the code. The toilets could not be placed in the proper location. But they could do the best they could. They did the best they could. But the issue, Your Honor, with the ---- Explain to me what's not intentional here. In the ordinary sense of the word, yes. Your Honor, I would continue to argue that when you say something has to be done on a readily achievable basis, I don't think the fact that the restaurant has operated in this fashion for all these years indicates that there's any intentional wrongdoing in failing to provide that access. Well, they're not intending to violate the law, but that's not required. So what's not intentional? I'm sorry, Your Honor? Not intending to violate the law. I understand that, but we agree that's not the test. So what is not intentional here? Maybe I'm missing the question. Intending to violate the law is not the standard, right? Well, it is under Gunther, unless I'm missing the point. So you think Gunther means that you have to know what the rules are intent to violate? I think you do have to know what it is that you are violating, and I think Harris says the same thing, that you have to intentionally violate the law. Well, Harris doesn't say that. Harris may say that you have to intend to discriminate on a prescribed basis, but you don't have to know that violates the law. I mean, for example, there are lots of Supreme Court cases about pension, about whether you can discriminate on the basis of pregnancy or on the basis of sex and pensions, and there was lots of arguments about why that doesn't violate the law. But they were discriminating on the basis of sex. Your Honor, now, I understand the distinction that you're making, and it's apparently been lost in my head here. But I'm having a hard time, as representing parties in these cases, separating the law from the concept of what is readily achievable. When you are intending to injure the disabled, how are you intending to do that when you don't know that you are? So that's a third possibility, that the offender is intending to injure the disabled? Well, I think isn't that the requirement of Harris, that you have to have an intent to discriminate? And by the way, one of our other arguments is, yes, indeed, you do have to have actual damages. And it's important to note before ---- Haven't we squarely held to the contrary of that? I'm sorry? Isn't the case on this circuit squarely to the contrary on that point? No, Your Honor. No case deals with that issue. None whatsoever. There hasn't been a case that's been decided. What about Bodesen? I'm sorry? What about the Bodesen case? The Bodesen case? No, Your Honor. There's no discussion there about whether actual injury is required. They never reached that issue. There's no case that has reached the issue, which is why, and the red light is on, which is why this case should be certified as we've requested to the Supreme Court. Do you think the downside is certification? That was your desire, I guess. That is our desire. It's unopposed. No, Your Honor, and I'll tell you why. One of the problems ---- It could take years. That's one downside. Well, it might take years, Your Honor, but we do need to know. We need to know the issue. Right now as it stands, we have some courts saying we'll ---- we have some district courts saying it's too hot an issue for us. We passed the State law claims back, meaning you got both ---- you got dual litigation going in the courts, or at least you have two lawsuits that need to be filed. That doesn't ---- that shouldn't have to occur. Now we don't know whether it's Gunther or Lentini. Go back to Bodesen. Bodesen on page 835 says, With regard to section 52A, the statute lists actual and statutory damages as two separate categories of damages that a plaintiff may recover. Therefore, proof of actual damages is not a prerequisite to recovery of statutory minimum damages. Am I missing something? I'm sorry, Your Honor. Are you missing something? That's not a decision? That's the 53 ---- section 53 damages. 52. I thought that was 54.3. No, it was 54.3. If it's 52, Your Honor, I apologize, and my mistake. The question then is Bodesen is just flat wrong. The statute requires actual damages, and the statutory damage of 4,000 is keyed on actual damage. The statute says actual damage twice, and it's required specifically, and then it's specifically defined as general or special damages. So let me just be sure I understand the way the State statute works. There are two levels of damages. No, Your Honor. There's actually only one level of damage. I thought there were two kinds of damages. Let me say ---- there's two levels of damages in the sense of this. You are entitled to what amounts to, if you will, an enhancement of the damage. But that enhancement is based on the actual injury. The statute specifically reads as follows, and I'm trying to make sure that I get it here. Whoever denies, aids, and cites denial or makes a distinction, or a distinction contrary to section 51, 51.5, 51.6, is liable for each and every offense for the actual damages and an amount that may be determined by a jury or a court sitting without jury up to a maximum of three times the actual damage, but in no case less than $4,000. So in other words, if the plaintiff proves a dollar injury, he's entitled to $3 of injury, but the court says we are going to ---- or the legislature says we're going to give an incentive and make it 4, minimum 4. But both of those are keyed off of actual damages. It doesn't say, or you get a minimum damage of $4,000. It simply doesn't say that under the code. But that's not really our problem, because we are a three-judge panel. The court has decided otherwise, and that's ---- Well, the Boddison case I thought was ---- Was that not a district court case? Section 52 is cited ---- I'm sorry? Is that not a district court case? Am I wrong about Boddison? You're wrong about Boddison. My apologies. And it cites Section 52, and that's what it's discussing, and that's what it holds. That Boddison was district court. My mistake. The only other point that I want to make, if I may, is that when you look at Subdivision C, it specifically requires intentional conduct in order for an award of injunction under the UNRU Act. So now what we have is ---- Under what? I'm sorry. Under the UNRU Act, you have to prove intentional conduct in order to obtain injunctive relief. That's 52C. What about getting it under 17200? I suppose you could. You could also get it under Section 55, which is in the Disabled Persons Act. But the point of the matter is, under the UNRU Act, Subdivision C extends the right to injunctive relief to the attorney general, city attorney, or any aggrieved person by the conduct may bring in the civil action. Section C was obviously about something else, which is it talks about is engaged in conduct of resistance to the full enjoyment of any rights. It's not talking about an ordinary violation. Described in this section, Your Honor. Right. And that's what it said. And in 52, you are talking about denies, aids, incites, denial, or makes a discrimination or distinction. So the ---- But you're saying that to get any injunction under the UNRU Act, you need intent, and I don't know where you're getting that from. Well, that's Subdivision C, Your Honor, because there's no other remedy allowed under Section 52, and there's no other remedy provision in the UNRU Act with respect to that conduct. And it's talking about any person aggrieved by the conduct may bring the civil action. And it's talking about conduct violative of this section. Okay. So you have an intentional conduct requirement for an ADA violation to get injunctive relief. Your Honor, what was said earlier with the plaintiff attorney was correct. This statute doesn't involve a complete incorporation of everything in the ADA. If it did, there wouldn't be any damage claim at all, because the ADA bars damages. So it would have to be purely based on the California law. Which Gunther is completely confused about. I'm sorry? Which Gunther is completely confused about. Well, Your Honor, one of the things is Bass v. County Abuse has said that the UNRU or the ADA is not fully incorporated in the UNRU Act. I understand, but I'm pointing out that Gunther was partly premised on an attempt to get parallel with a vision of the ADA, which is not actually what the ADA is. But I think what it was, what was intended by the incorporation of the ADA was to bring in any form of discrimination that wasn't covered in California law. But the, but, I'm sorry, but the, but as far as the remedy is concerned, there is no burden of proof remedy in the ADA for damages. And what I've just indicated here is the burden of proof remedy for injunctive relief also appears to be intentional wrongdoing under the UNRU Act. Now, again, California Disabled Persons Act, which quite frankly is more specific and probably is the one that actually applies here, doesn't require such conduct and has been so held. That's what I wanted to ask you about, two different things. First of all, that statute does have a provision for damages, although lesser, now lesser.  Did it go to the jury, the Section 54 claim? Section 54 was, no, Your Honor, because they chose to proceed with Section 52 only. And second of all, I think in the briefs, maybe not in this case, but one of the others, there is a representation that although the damages provisions are now different, they have at various times actually been the same for the two statutes. Is that accurate? Do you know? They have been at times the same, correct. And it was changed a number of years back. Okay. But I think it started out at $500 at one point. Counsel, you've considerably exceeded your time. We've eaten up a lot of it with questions, so we thank you for your arguments. And you used up your time, but we'll give you a couple of minutes for rebuttal if you'd like it. And then we'll take our break. I think we can solve this whole idea of intent if we go back to the Code of Federal Regulations, back to a duty to identify and remove barriers. And if there's inaction, they don't do anything, then I think you have your intent there. But I don't think you have to put it, make that a prerequisite, if you're following me. Isn't there one of the cases that you stipulated that you had no evidence of intentionality? Maybe not this one. Maybe it was one of the others. Could be. Later today or tomorrow, one of those. It couldn't be tomorrow. We're not on tomorrow. As far as Mr. Jenke not being there, there was no special finding to that regard. And furthermore, he wouldn't even necessarily have to be there if he knew that there were barriers under the feudal gesture language of the ADA. But that's not how you tried the case. You tried the case that other way. Well, no. I realize that. I'm just talking about. And the record is pretty bizarre because he says he was there six or eight times apparently in the deposition. He said he wasn't there at all again. And he seemed quite confused about where he was. Quite confused. And just to make the record straight, as far as any alterations to this place, there were alterations in the 80s which would have triggered Title II compliance, which wasn't done. Whether the ABC, Alcohol Beverage Control Board, approved something or doesn't approve anything, the fact is that under Title II, any agency has to make changes in their policies and procedures unless it affects health or some other significant risk. And Los Burritos, it's not a chain. Neither is In-N-Out Burger. I'm not suggesting it's as big as In-N-Out, but they had several restaurants. And I would say that the owner of Los Burritos, Mr. Val Villarreal, is a very nice, kind, considerate person who removed the barriers. Nonetheless, the barriers existed when Mr. Jenke was there,  Thank you, counsel. The case just argued is submitted. We appreciate, again, the arguments of counsel. And we will take a short recess and come back for the rest of our calendar.
judges: Graber, Berzon, Wilken